**JOHN R. STEELE & ASSOCIATES, INC., Plaintiff,**

v.

**Pietro VILLANTE, Defendant.**

**Civ. No. 84–3463 (AET).**

United States District Court, D. New Jersey.

April 29, 1987.

Linda G. Harvey, Greenberg, Dauber & Epstein, Newark, N.J., for plaintiff.

Martin W. Yazgier, Matawan, N.J., for defendant.

## MEMORANDUM AND ORDER

ANNE E. THOMPSON, District Judge.

This matter comes before this court for the resolution of the question of plaintiff Dr. John Steele's entitlement to a portion of the proceeds from the sale of two of

defendant Pietro Villante's horses, Larch Hanover and Carafe. Plaintiff obtained a judgment against the defendant for $17,786.72 in March 1985. The judgment remains unsatisfied. Defendant argues that plaintiff is not entitled to any proceeds from the sale as the horses did not belong to the defendant at the time they were sold.

Defendant claims that the horses were transferred to a corporation in 1982. This corporation, MLSPV–Carafe Corp., consisted of Pietro Villante and Mr. and Mrs. Scudutto. The Scuduttos have since disappeared leaving the defendant as the sole shareholder in the corporation. Defendant further claims that the horses were transferred from the corporation to his son, Saverio Villante, on June 3, 1985, to compensate his son for wages owed him by the corporation. Ten months later, in April 1986, the horses were sold by Saverio Villante for $122,000. $17,786.72 of the proceeds of the sale is being held in an escrow account pending the outcome of this motion.

Plaintiff claims that the "transfer" of the horses from Pietro Villante to his son was fraudulent because there was no fair consideration. Pursuant to N.J.S.A. 25:2–10, "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation incurred without fair consideration." Plaintiff argues that although the horse was owned by MLSPV–Carafe Corporation in which Pietro Villante was one of three shareholders, the court "should pierce the corporate veil" and use these corporate assets to satisfy Villante's debt. At the time of the transfer from Pietro Villante to Saverio Villante, Pietro Villante was the sole shareholder whose whereabouts were known and he was conducting all the corporation's business. Pietro Villante had sole control over the assets of MLSPV–Carafe Corporation. New Jersey courts have agreed that it is permissible to ignore a separate corporate identity when the parties are identical and were on notice of all legal action. *Laborers Local Union v. Interstate Curb and Sidewalk*, 90 N.J. 456, 464–465, 448 A.2d 980 (1982). At the time Pietro Villante transferred the horses to his son he was on notice of the judgment against him. Furthermore, New Jersey courts have concluded that when fraud is shown to exist a court may pierce the corporate veil in order to impose liability on the corporate principals. *Lyon v. Barrett*, 89 N.J. 294, 300, 445 A.2d 1153 (1982).

The court must, therefore, determine whether the conveyance of the horse from Pietro Villante to Saverio Villante was a fraudulent one. In *U.S. v. Mazzara*, 530 F.Supp. 1380, 1383 (D.N.J.1982), *aff'd* 722 F.2d 733 (3d Cir.1983), the court indicated that "the purpose of the fraudulent conveyance statute is to prevent insolvent debtors from placing their property beyond the reach of their creditors while at the same time enjoying the benefits thereof." The burden does, however, rest on the plaintiff in this case to show that the transfer was fraudulent and that at the time of the transfer or as a result of the transfer the transferor became insolvent. *Telefest, Inc. v. VU–TV, Inc.*, 591 F.Supp. 1368, 1376 (D.N.J.1984).

The court finds on the basis of the testimony presented to it on April 20, 1987 that the plaintiff has met his burden and shown the court that the transfer was fraudulent. The court finds that the testimony of both Pietro Villante and Saverio Villante was not credible. Both parties were unable to tell the court how much the corporation and Pietro Villante individually owed to Saverio Villante. At various times throughout the hearing different amounts were mentioned. The parties were not even clear as to the amount per week that Saverio Villante was supposedly being paid by the corporation. At one time Pietro Villante stated his son was being paid $600 per week, and at different times Saverio Villante mentioned both $600 and $400 per week. This same confusion had apparently existed at the time the witnesses' depositions were taken. Furthermore, Pietro and Saverio Villante were only able to estimate how long Saverio Villante had worked for

the corporation, how much the corporation had paid him and how much the corporation had owed him at the time the horses were transferred to him. They were not able to produce any books or records from the corporation. Pietro Villante alleges that the Scuduttos, the two other shareholders in the corporation, have fled with the books; yet neither the defendant nor his son were able to recall seeing the books of the corporation, recording the number of hours the son worked or any written documentation of how much the corporation owed Saverio Villante.

Pietro Villante testified at one point that the corporation owed his son approximately $30,000 and that he personally owed his son approximately $20,000. The total amount owed to Saverio Villante would, therefore, have been approximately $50,-000. The parties claim that the horses were transferred in payment for this approximately $50,000 debt, yet ten months after the horses were transferred to Saverio Villante he was able to sell them for a total of $122,000. While the court understands that some increase in value may have occurred in the ten months that Saverio Villante owned the horses, the sale price was over twice as much as the estimated debt supposedly owed to him. The court was not provided with a credible explanation of this dramatic increase in value in such a short time period.

The court finds that in June of 1985 Pietro Villante was on notice of a judgment which had been entered against him for $17,786.72. Pietro Villante was at that time the sole remaining shareholder of the MLSPV–Carafe Corporation. He had sole possession of the corporation's two remaining assets, Larch Hanover and Carafe. There is no dispute that in June of 1985 these two horses were the sole remaining assets in Pietro Villante's possession. On June 3, 1985 Pietro Villante transferred these two remaining assets to his son Saverio Villante. The court cannot find that the transfer was made for value. The Villantes have not provided credible testimony as to the actual amount of money owed to Saverio Villante. The court finds that the transfer was made in order to prevent plaintiff or other creditors from receiving payment for judgments held against the defendant. This is a case in which the court may pierce the corporate veil in order to assure that justice is done. Pietro Villante was the sole remaining shareholder of MLSPV–Carafe Corporation, the corporate assets were entirely under his control and he was on notice of the judgment against him. By transferring the two horses to his son, Pietro Villante disposed of his last assets thus attempting to place them beyond the reach of plaintiff. *United States v. Mazzara, supra.*

It is therefore on this 28th day of April 1987,

ORDERED that the money now being held in escrow from the sale of Larch Hanover and Carafe be turned over to plaintiff in satisfaction of the judgment against defendant.